# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES G. KOMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-1836 |
| | § | |
| WEINGARTEN/INVESTMENTS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is plaintiff James G. Koman's  motion for preliminary injunction (Dkt. 15) and defendant Weingarten/Investments Inc.'s motion to dismiss (Dkt. 14).  After consideration of the parties' briefing, oral arguments made at the hearing on July 29, 2010, and the applicable law, the court holds that the decision regarding whether Weingarten/Investments, Inc.'s ("WII") and Weingarten Realty Investors' ("WRI") claims are arbitrable lies with this court. Accordingly, the motion for a preliminary injunction is GRANTED.  WRI and WII are preliminarily ENJOINED from pursuing the claims against Koman in the American Arbitration Association ("AAA") Commercial Arbitration Number 70115Y0038109.

Additionally, the court ORDERS WII to submit further briefing regarding the arbitrability of WII and WRI's claims on or before September 27, 2010.[1]  The court ORDERS Koman to file a response to address issues raised in WII's additional briefing on or before October 11, 2010.

---

[1]  The court is particularly interested in obtaining the parties' input regarding whether Koman can be required to arbitrate under any of the theories for binding a nonsignatory to an arbitration agreement outlined by the Fifth Circuit in *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003).

# I. BACKGROUND

Koman is the president of South Fulton, KPI ("South Fulton").  Dkt. 21.  In January 2007, South Fulton and WII formed Weingarten-Fulton LLC (the "LLC"), a joint venture limited liability corporation, to develop a tract of land in Fulton County, Georgia into a shopping center.  Dkt. 21 & Exh. A.  On January 10, 2007, South Fulton and WII executed an Operating Agreement to govern the conduct and affairs of the LLC.  Dkt. 21.  Koman was not a party to and did not sign the Operating Agreement in his individual capacity. Dkt. 21, Exh. A, at 35.

The LLC obtained financing for the construction project from WRI, which is WII's parent company.  Dkt. 21, 25.  The loan was guaranteed up to 50% by WII and also up to 50%, jointly, by South Fulton and Koman.  Dkt. 21, 25.  After the general state of the economy throughout the country began to decline, the proposed anchor tenant, Wal-Mart, decided not to lease space in the new development. Dkt. 25.  This turn of events led to alleged breaches of the Operating Agreement, the loan agreements, and the guaranty, which eventually resulted in litigation in several different forums.

Neither the loan agreements nor the guaranty agreement contain an arbitration clause.  Dkt. 21, Exhs. B-D.  However, the Operating Agreement, which was signed by South Fulton and WII, has the following arbitration clause:

> If a dispute, controversy or claim (whether based upon contract, tort, statute, common law or otherwise) . . . arises from or relates directly or indirectly to the subject matter hereof, and if the Dispute cannot be settled through direct discussions, the parties shall first endeavor to resolve the Dispute by participating in a mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Rules before resorting to arbitration.  Thereafter, any unresolved Dispute shall be settled by binding arbitration administered by the AAA in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator, after the review rights set forth below have been exhausted, may be entered in any court having jurisdiction. . . . .

Dkt. 21, Exh. A, at 16.  Pursuant to this clause, WII filed a demand for arbitration with the AAA against South Fulton, claiming breach of the Operating Agreement on June 5, 2009.  Dkt. 21.  South Fulton also filed a demand for arbitration with the AAA, on August 28, 2009, claiming that WII had breached the Operating Agreement.  Dkt. 21, Exh. E.  The two arbitration proceedings have since been consolidated.  Dkt. 21.

On the same day that WII filed its claim against South Fulton with the AAA, WRI filed a claim against South Fulton and Koman in the 270th District Court of Harris County, Texas, to recover money under the loan agreement, note, and guaranty agreement—none of which contains an arbitration clause.  Dkt. 25, Exh. 3; Dkt. 21, Exhs. B-D.  South Fulton and Koman removed the case to federal court.  Dkt. 23.  WRI then dismissed the claim against South Fulton and Koman and re-filed the claim in the 234th District Court of Harris County, adding the LLC, a non-diverse entity, as a defendant.  Dkt. 23, Exh. 7.  On August 26, 2009, Koman and South Fulton filed an answer and counterclaim against WRI, alleging breach of the guaranty, note, and loan agreement, as well as various tort claims.  Dkt. 23 & Exh. 8.  Koman and South Fulton also initiated a third-party claim against WII for breach of the Operating Agreement as well as other causes of action.  Dkt. 14, Exh. 6.  Soon thereafter, they amended the third-party claim to drop South Fulton, which was a signatory to the Operating Agreement containing the arbitration clause, as a third-party petitioner.  Dkt. 14, Exh. 7.

As the state court action proceeded, WRI filed a motion for summary judgement, and South Fulton and Koman filed a cross-motion.  Dkt. 21.  On January 6, 2010, the 234th District Court judge granted South Fulton's and Koman's motion, holding that the conditions precedent to their

3

obligations under the guaranty agreement had not yet occurred.  Dkt. 21, at 6 & Exh. I.  The court denied WRI's motion for summary judgment.[2]  Dkt. 21.

On April 7, 2010, WRI and WII moved to compel arbitration of Koman's third-party claim as well as the counterclaims.  Dkt. 14, Exh. 9.  Koman then non-suited his third-party claim against WII, and Koman and South Fulton amended their counterclaims against WRI.  Dkt. 14, Exhs. 10, 11.  The court granted WRI's motion to compel arbitration on May 4, 2010, and it stayed all other claims until completion of the arbitration.   Dkt. 14, Exh. 12.

Two days later, on May 6, 2010, Koman filed a notice of nonsuit of his counterclaims against WRI.  Dkt. 14, Exh. 13.  The state court, however, has not acted on the notice.[3]  Dkt. 25.  WRI claims that Koman's attempt to nonsuit the claims was a maneuver to avoid arbitration of the claims and that Koman cannot actually avoid arbitration of the claims because the state court compelled arbitration.  *Id.*  Koman's claims are, according to WRI, automatically pending before the arbitration panel due to the state court's order compelling arbitration.  *Id.*  Koman claims, conversely, that his claims are not pending before the arbitration panel because he has never filed them with the arbitration panel.  Dkt. 26.  Koman claims that he has no need to pursue the claims because the state court granted summary judgment against WRI with regard to the loan agreements, and he asserts that he cannot be forced to pursue claims that he no longer wishes to pursue.  *Id.*; Dkt. 21, at 7.

_____

[2]The state court has since severed this claim, and WRI has filed an appeal.  Dkt. 23 & Exh. 13.

[3]  The parties disagree as to whether the nonsuit was effective when it was filed.  WII and WRI claim that it was void because Koman could not file a nonsuit of claims that the court had already ordered be arbitrated.  Koman claims that he has the right to choose not to pursue his own claims and that the nonsuit was effective when filed.

WII and WRI filed a second amended statement of claim in the arbitration against both South Fulton and Koman in May 2010, which seeks a ruling that Koman is personally liable for South's Fulton's obligation to make a capital contribution under the Operating Agreement.[4] Dkt. 21. Koman thereafter filed the instant claim, which seeks an order declaring that Koman is not required to arbitrate WII and WRI's claims against Koman and an injunction that prohibits WRI and WII from arbitrating these claims. Dkt. 5. Koman argues that WII and WRI's claims against him as an individual are not subject to arbitration because he is not a signatory to the Operating Agreement and therefore never agreed to submit to arbitration in his individual capacity. Dkt. 5. WII and WRI, on the other hand, argue that their claims against Koman are merely the flip side of Koman's claims against them, which are, under WII's and WRI's reasoning, already part of the arbitration due to the state court's order compelling arbitration. Dkt. 25. WII and WRI therefore request that the court deny the motion for an injunction and, further, that the court dismiss Koman's claim, or, in the alternative, abstain from ruling on the claim in deference to the state court. Dkt. 14, 25.

## II.  Legal Standard and Analysis

WII and WRI argue that the court should deny Koman's request for a preliminary injunction because (1) Koman implicitly agreed to the arbitration of WII and WRI's claims against him as an individual when Koman filed claims against them in state court; and (2) the state court has already decided the arbitrability issue in WII and WRI's favor. Alternatively, WII and WRI argue that the court should abstain from deciding this dispute as the decision more appropriately lies with the state court. The court will address each of these arguments relating to the court's authority to determine

_____

[4] The arbitration panel has since ruled that the claims are subject to arbitration. Dkt. 14, ¶ 17 & Exh. 16.

the arbitrability of WII and WRI's claims in turn and then address whether the preliminary injunction should issue.

A.      **The court's authority**

The decision regarding who has authority to decide whether a party has agreed to arbitrate a dispute "can make a critical difference to a party resisting arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995).  If the parties agreed to submit the arbitrability decision to an arbitration panel, then the court must defer to the arbitrator's decision regarding arbitrability. *Id.* at 943, 115 S. Ct. at 1924.  If, however, there was no agreement regarding who would decide if a dispute was arbitrable, the decision should be with the court. *Id.* at 943, 115 S. Ct. at 1923-24.  Courts employ a strong presumption in favor of arbitration of a dispute if the arbitration agreement is ambiguous, but the presumption for ambiguities regarding whether there is an agreement to submit arbitrability to the arbitrator is reversed. *Id.* at 944, 115 S. Ct. at 1924.  The court "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  *First Options*, 514 U.S. at 944, 115 S. Ct. at 1924 (alterations in original).  In making this determination, the court must apply ordinary state contract law. *Id.*

### 1.      *Koman did not agree to let the arbitration panel determine arbitrability.*

While it is uncontroverted that Koman, as a nonsignatory to the Operating Agreement, did not expressly agree to arbitrate arbitrability, WII and WRI contend that Koman's actions in the state court indicate agreement.  Specifically, WII and WRI argue that Koman should have known that the claims he brought in state court were subject to arbitration under the AAA Commercial Arbitration Rules, and he therefore should be bound by these rules.  Dkt. 27 at 9.  The arbitration clause in the Operating Agreement requires that any dispute arising under or relating to the agreement that could

6

not be resolved by mediation "shall be settled by binding arbitration administered by the AAA in accordance with its Commercial Arbitration Rules . . . ." Dkt. 21, Exh. A. Rule 7 of the AAA Rules gives the arbitration panel the power to rule on its own jurisdiction. Dkt. 25, at 11-12; *see* American Arbitration Association, Commercial Arbitration Rules, *available at* www.adr.org (last visited Sept. 9, 2010); *see also Haddock v. Quinn*, 298 S.W.3d 158, 172-175 (Tex. App.–Fort Worth 2009, pet. denied) (discussing Rule 7(a) of the Commercial Arbitration Rules of the AAA, "which provides that the arbitrator 'shall have the power to rule on his or her own jurisdiction . . . .'"). Thus, under WII and WRI's reasoning, Koman should have known that any questions relating to arbitrability of the claims he brought in state court would be decided by the arbitration panel in accordance with the AAA rules because the claims related to the Operating Agreement, which requires arbitration of disputes pursuant to the AAA rules. *See* Dkt. 21, Exh. A (Operating Agreement).

This roundabout reasoning is by no means "clear and unmistakable evidence" that Koman agreed to be bound by the arbitration panel's decision on arbitrability. First of all, Koman did not sign the agreement to arbitrate contained in the Operating Agreement in his individual capacity, so it is not "clear" that he would assume that it would apply to him, individually, if he filed claims in state court. Second, even if one were to presume that Koman knew that the Rules referred to in the Operating Agreement allowed an arbitrator to determine arbitrability of the claims he filed in state court, it is not Koman's claims that are under consideration for arbitration at this point—it is WII and WRI's amended arbitration claims. The presumption cannot be carried so far as to imagine that Koman could foresee that his filing was empowering an arbitration panel to determine arbitrability of "counterclaims" that were not yet filed (and, in fact, never filed in the state court).[5]

_____

[5] *Cf. Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App.–Ft. Worth 2009, pet. denied) (holding that "a general reference in the arbitration agreement to the AAA rules, without more,

2.      **Estoppel does not apply.**

WII and WRI also argue that, even if there were no agreement to arbitrate arbitrability, the decision regarding arbitrability has already been made by a court—the state court.  Dkt. 25.  In order to determine if the state court's action bars this court from deciding the arbitrability of WII and WRI's claims, the court must apply Texas rules relating to the preclusive effects of judgments.  *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S. Ct. 873, 877 (1996).  Under Texas law,

> "Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. . . . Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel).  Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as matters that, with the use of diligence, should have been litigated in the prior suit. . . . Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.

*Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 629 (Tex. 1992) (citations omitted).

WII and WRI have not shown that the state court's decision to compel arbitration of Koman's claims precludes this court from deciding whether WII and WRI's claims against Koman are arbitrable.  First, there is no final judgment in the state court action, so, under Texas law, the state

does not clearly and unmistakably manifest [the] parties' intent to refer the issue of waiver by litigation conduct to the arbitrator"); *Burlington Resources Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 40 (Tex. App.–Houston (1st Dist.) 2007, no pet.) (reasoning that even "if we were to conclude . . . that some ambiguity was created by the parties' reference to the AAA rules, the parties simply did not clearly and unmistakably submit the issue of arbitrability to arbitration").

court's order compelling arbitration has no preclusive effect.[6]  Second, even if the state court's determination that Koman's claims against WII and WRI are subject to arbitration were final, that decision related to *Koman*'s claims, not WII and WRI's.  WII and WRI's claims against Koman were never even filed in the state court.[7]  The court acknowledges the possibility that some of the issues that the state court decided when it determined that Koman's claims were subject to arbitration could be the same as issues that will need to be determined to reach a decision regarding WII and WRI's claims against Koman.  However, the state court did not explain why it compelled arbitration of Koman's claims in its order compelling arbitration, so any discussion of issues that may have been determined by the state court is purely conjectural.  Thus, while some of the issues considered by the state court in reaching its decision may have been the same, that possibility alone does not rise to a judgment that has a preclusive effect.  *Cf. Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751-52 (5th Cir. 1986) (holding that application for a stay of litigation pending arbitration was not barred by another court's denial of a motion to compel arbitration because "the order denying the petition to compel did not indicate its basis," and the Fifth Circuit could not "tell whether the court [that denied the motion to compel] actually reached and decided the merits of the arbitration issue").

### 3.     Abstention is inappropriate.

WII and WRI argue, in the alternative, that the court should abstain from exercising

---

[6]  The state court has stayed all proceedings pending the outcome of arbitration.  Dkt. 21, Exh. L.

[7]  While the arbitration panel found that the state court "implicitly made an independent determination that Koman, individually, is subject to the authority of [the] panel in claims involving the subject matter of this dispute," the state court's order gives no indication that it was compelling arbitration of all claims relating to the dispute.  Dkt. 21, Exhs. L, Q.

jurisdiction in this case because any decisions that need to be made by a court regarding arbitration should be made by the state court. Dkt. 27. Federal courts in the Fifth Circuit considering whether to abstain from ruling on a case in which the plaintiff seeks both injunction and declaratory relief apply the exceptional-circumstances test set forth by the U.S. Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976).[8]  *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009). Under the *Colorado River* standard, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S. Ct. at 1246. Therefore, abstention "from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813, 96 S. Ct. at 1244.

Under Colorado River, a court must first determine whether the federal and state court cases are "parallel." *See Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005). In order to be "parallel," the state and federal actions must involve the same parties and the same issues. *Id.* However, "there need not be applied in every instance a mincing insistence on precise identity of these." *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). Here, the parties are the same, but the claims are not. WII and WRI's claims were never even filed in the state court. WII and WRI claim, however, that their claims are the "mirror image" of Koman's state court claims. Dkt. 25. While WII and WRI's claims are, to some extent, reflective of Koman's claims, the issues are not the "same." For instance, Koman's state court claims assert that WRI is WII's alter ego, and WII and WRI claim that Koman is South Fulton's alter ego. While

---

[8]  While there is some debate in the briefing regarding whether *Colorado River* provided the appropriate test, the parties conceded that it is the appropriate test during oral arguments on July 29, 2010.

the same legal standard would apply to the determination of either claim, the factual determination would be completely different.  Thus, the claims in the state court are not "parallel"—as the term is applied in cases interpreting *Colorado River*.

Furthermore, even if the claims were parallel, the court should not abstain.[9]  When the state and federal actions are parallel, courts must determine "whether exceptional circumstances exist that would permit a district court to decline exercising jurisdiction" by carefully weighing and considering the following six factors:

> (1)  assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000).  "In assessing the propriety of abstention according to these factors, a federal court must keep in mind that 'the balance [should be] heavily weighted in favor of the exercise of jurisdiction.'"  *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 14 103 S. Ct. 927 (1983)).

The first two factors weigh against abstention.  This case does not involve the assumption of jurisdiction over any res, and the federal and state courts are both located in Houston.  *See id.*

The third factor, avoidance of piecemeal litigation, weighs slightly in favor of abstention.  However, this court is asked merely to determine the arbitrability of WII and WRI's claims, not to resolve the claims.  Thus, after the arbitrability determination is made, the claims will either be

---

[9]  The Fifth Circuit generally goes on to apply the *Colorado River* factors whenever there is a "close call" regarding whether the state and federal claims are parallel.  *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 395 & n.7 (5th Cir. 2006); *Transocean Offshore USA, Inc. v. Catrette*, 239 Fed. Appx. 9, 12 (5th Cir. 2007).

resolved by the arbitrator or, the court presumes, filed in the state court after the arbitration

concludes and the state court lifts the stay.  Therefore, while weighing in favor of abstention, this

factor standing alone is not enough to tip the balance.  *See Stewart v. Western Heritage Ins. Co.*, 438

F.3d 488, 492-93 (5th Cir. 2006) (holding that abstention was inappropriate when the only factor

weighing in favor of abstention was the avoidance of piecemeal litigation factor).  Moreover, as the

Fifth Circuit has recognized, "even if some piecemeal litigation does result, that sometimes is the

inevitable result of a congressional policy strongly favoring arbitration. . . .

> 'That misfortune . . . is not the result of any choice between the
> federal and state courts; it occurs because the relevant federal law
> *requires* piecemeal resolution when necessary to give effect to an
> arbitration agreement.  Under the Arbitration Act, an arbitration
> agreement must be enforced notwithstanding the presence of other
> persons who are parties to the underlying dispute but not to the
> arbitration agreement.'

*Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1265-66 (5th Cir. 1994) (quoting *Moses H. Cone*

*Memorial Hosp.*, 460 U.S. at 20, 103 S. Ct. at 939).

The next abstention factor is the order in which jurisdiction was obtained.  WII and WRI

argue that this factor weighs strongly in favor of abstention because "the state court has had

jurisdiction over the *parties* for over a year."  Dkt. 27 (emphasis added).  However, the question is

not how long the state court has had jurisdiction over the parties, it is "how much progress has been

made in the two actions."  *Moses H. Cone Memorial Hosp.*, 460 U.S. at 21, 103 S. Ct. at 940

(instructing that this factor "is to be applied in a pragmatic, flexible manner with a view to the

realities of the case at hand" and that "priority should not be measured exclusively by which

complaint was first filed").  While the state court is more familiar with the parties given the length

of time in which the case has been pending in that court, it is not familiar with WII and WRI's claims

against Koman, which were never even filed in that court.

The Fifth Circuit's opinion in *Snap-on Tools Corp. v. Mason* is on point.  In *Snap-on*, the defendants had filed a claim against Snap-On in state court that related to a contract containing an arbitration clause.  After attempting to stay the state court proceedings and filing a demand for arbitration, Snap-on filed a motion to compel arbitration in federal court.  *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1262-63 (5th Cir. 1994).  The defendants filed a motion to dismiss, which the federal district court granted on abstention grounds.  *See id.* at 1263.  Snap-on appealed, and the Fifth Circuit considered the case under the *Colorado River* factors.  *See id.* at 1264.  In analyzing the fourth factor, the Fifth Circuit reasoned that "Snap-on had no notice that the [defendants] would repudiate their apparent duty to arbitrate until the state court suit was filed, and therefore, there is no reason why Snap-on should be expected to have filed the within suit before that date."  *Id.* at 1266.  Additionally, the state court had not substantially proceeded towards disposition of the case."  *Id.*  The Fifth Circuit ultimately concluded that, though the federal case would result in some piecemeal litigation and the state court case was filed first, the defendants had "not demonstrated 'exceptional circumstances' which [supported] abstention."  *Id.* at 1268.  WII and WRI also have not show "exceptional circumstances" supporting abstention.  WII and WRI never filed the claims against Koman in the state court and Koman had no reason to file the instant action until WII and WRI filed their claims against him in arbitration.  This factor, thus, does not favor abstention.

The fifth factor is whether and to what extent federal law provides the rules of decision on the merits.  While federal law controls whether the claims will be submitted to arbitration, *see Moses H. Cone*, 460 U.S. at 24, 103 S. Ct. at 941 (federal law governs arbitrability in state or federal court), state contract law also plays a role, *see First Options*, 514 U.S. at 944, 115 S. Ct. at 1924 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts.").

13

However, although "in some rare circumstances the presence of state-law issues may weigh in favor of [abstention] . . ., the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26, 103 S. Ct. at 942.  Thus, while there will be some reliance on state law in the analysis, this factor is, at most, neutral.

The final *Colorado River* factor is the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  This factor, by its nature, "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir. 1988).  Here, Koman does not argue that the state court could not adequately protect his interests, so this factor is neutral.

Since the test begins with a balance heavily weighted towards exercising jurisdiction, the avoidance of piecemeal litigation, particularly in light of *Moses H. Cone*, *Snap-on*, and *Stewart*, is not enough to tip the scales the other way.  The court therefore DENIES WII and WRI's alternative request for abstention.

## B.    Preliminary Injunction

"To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009).  A preliminary injunction is "an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Id.* (citation omitted).

     *1.      Likelihood that Koman will prevail on the merits.*

Koman's complaint seeks a declaration stating that Koman is not required to arbitrate the claims that WII and WRI brought against him, individually, in the pending arbitration and a preliminary and permanent injunction prohibiting WII and WRI from proceeding with the arbitration against Koman.  Dkt. 5.  This order addresses the motion for a preliminary injunction, not the motion for a permanent injunction.  For the purposes of a motion for a preliminary injunction, the question is not whether the court will ultimately declare the claims arbitrable.  Instead, the court must determine the likelihood of success as to Koman's contention that the court, and not the arbitrator, must determine whether the claims are arbitrable.  *See Dean Witter Reynolds, Inc. v. M.C. McCoy*, 995 F.2d 649, 650 (6th Cir. 1993).

As discussed in section A above, WII and WRI's arguments regarding the court's authority to determine the issue of arbitrability are unavailing.  Koman did not agree to arbitrate arbitrability, either expressly or implicitly.  Accordingly, Koman has carried his burden of persuasion on this factor.

     *2.      Substantial threat that Koman will suffer an irreparable injury if the injunction is not granted.*

As noted by the Supreme Court in *First Options*, while a party that has not agreed to arbitrate has a "right to the court's decision about the merits of its dispute," a party that "has agreed to arbitration . . . has relinquished much of that right's practical value."  *First Options*, 514 U.S. at 942, 115 S. Ct. at 1923.  The party that submits to arbitration "still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances."  *Id.*  Therefore, the decision as to whether the party ultimately ends up before the court or the arbitrator is "critical."  *Id.*

The arbitration panel has already decided that WII and WRI's claims against Koman are subject to arbitration. Thus, if the court were to rule that the panel could decide arbitrability, Koman will be able to receive only a limited review of the panel's ultimate decision regarding WII and WRI's claims. *See id.* Koman contends that this limited appellate review of the panel's decision is an irreparable harm. WII and WRI counter this argument by stating that "Koman . . . chose to go the [sic.] arbitration in the first instance by asserting arbitrable claims." Dkt. 25 at 17-18. As discussed above, Koman's filing of the claims in state court is not clear and unmistakable evidence of an agreement to submit the question of arbitrability to an arbitration panel.[10] Forcing Koman "to arbitrate a matter that [he] never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives [him] of [his] right to select the forum in which [he] wishes to resolve disputes." *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharmaceutical Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) (finding that sending a dispute to arbitration that the plaintiff did not agree to arbitrate would cause irreparable harm); *see also, e.g.*, *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (finding it "obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction"), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85, 123 S. Ct. 588 (2002); *Kellogg Brown & Roots Servs., Inc. v. Altanmia Commercial Marketing Co. W.L.L.*, 2007 WL 4190795, at *15 (S.D. Tex. Nov. 21, 2007) (collecting cases finding that a party forced to arbitrate a dispute which it did not agree to arbitrate was irreparably harmed

---

[10] Koman also indicates that the additional expense of arbitration is an irreparable harm. Koman does not, however, point to any additional expense that he, specifically, will incur if the arbitration panel were to decide arbitrability. In fact, since the arbitration panel has already made its decision, the additional expense appears to be in asking this court to decide. Thus, the court is not convinced that the additional expense of arbitration is an irreparable injury that will occur if the preliminary injunction is not granted.

16

and distinguishing cases that have found that forcing a party to arbitrate a nonarbitrable issue is not an irreparable harm by noting that these cases all involved a clear agreement to arbitrate certain claims).

>    3.    *Balance of "harm."*

The third factor courts consider when deciding whether to grant injunctive relief is whether the injury threatened to the party seeking the injunction outweighs the threatened harm to the parties whose actions will be enjoined.  Koman's threatened injury is having to arbitrate a dispute that he contends he never agreed to arbitrate.  WII and WRI claim that the harm they face is that "any award rendered against South Fulton, which is a single-purpose entity, is likely to go unsatisfied" if they are unable to go forward with their claim that Koman is South Fulton's alter ego.  Dkt. 25, at 22-23. WRI claims that "resolution of such matters will be delayed indefinitely" if it cannot assert the claims in arbitration.  *Id.*  Since the present order merely disposes of the issue of whether the court or the arbitrator will decide arbitrability, then WII and WRI's asserted harm is not relevant.  If, as WII and WRI claim, Koman is South Fulton's alter ego, then the court eventually will determine, as required by *Bridas*, that Koman is bound by the arbitration clause.  *See Bridas*, 345 F.3d at 356, 358-60.  The harm suffered by Koman if the court allows the arbitration panel to determine arbitrability is more salient.  The panel has already determined that WII and WRI's claims against Koman are subject to arbitration.  Therefore, if the court does not grant the preliminary injunction, Koman will be forced to arbitrate claims that he may not be legally bound to arbitrate.  Thus, the potential harm to Koman is greater than the potential harm to WII and WRI at this juncture.

>    4.    *The public interest.*

The court must next consider whether granting the preliminary injunction will disserve the public interest.  While there is a strong public policy favoring arbitration, as argued by WII and WRI,

there is also a strong public policy against holding an individual to a contract to which he or she did not agree.  *See First Options*, 514 U.S. at 947, 115 S. Ct. at 1925 (The "basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, . . . but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms." (internal quotation omitted)).  Koman did not agree to allow the arbitrator to determine the arbitrability of WII and WRI's claims against him.  Thus, the granting of the preliminary injunction does not disserve the public interest.

Therefore, because Koman has shown that he did not agree to arbitrate arbitrability, he will suffer irreparable harm if required to do so, any potential harm suffered by WII and WRI if the preliminary injunction is granted is outweighed by the potential harm suffered by Koman if it is not, and public policy does not favor forcing an individual to arbitrate arbitrability if the individual did not agree to do so, the court GRANTS Koman's request for a preliminary injunction.

## C.      Motion to Dismiss

WII has also filed a motion to dismiss.  Dkt. 14.  During the hearing on July 29, 2010, the parties agreed that this case has been fully briefed and that the motion to dismiss should be converted to a motion for summary judgment.  However, most of the briefing previously submitted by the parties focused on whether a preliminary injunction should issue.  The court ultimately must determine if a permanent injunction is appropriate.  The permanent injunction test is essentially the same as the preliminary injunction test except for the first factor.  The first factor of the preliminary injunction test requires a showing demonstrating a likelihood of success on the contention that the court, and not the arbitrator, must determine if the claims are arbitrable. *See Dean Witter Reynolds, Inc.*, 995 F.2d at 650.  The first factor in the permanent injunction test requires a determination of actual success on the merits.  *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12,

18

107 S. Ct. 1396 (1987); *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). Thus, in determining whether the permanent injunction should issue, the court must determine if WII and WRI's claims are appropriately before the arbitration panel. Neither the arguments at the hearing nor the current briefing adequately address the actual arbitrability, or lack thereof, of WII and WRI's claims against Koman. Therefore, the court requests that the parties submit further briefing, as outlined above.

The court, being mindful of the date of the upcoming arbitration hearing, has purposefully set a short timeframe within which the supplemental briefing should be filed. The parties may meet and confer about these deadlines and submit an agreed-upon alternative briefing schedule.

### III. Conclusion

Having determined that the court has the authority to make the decision regarding whether WII and WRI's claims against Koman in his individual capacity are arbitrable and that Koman has carried his burden with respect to his request for a preliminary injunction, the court hereby GRANTS Koman's motion for a preliminary injunction and ENJOINS WII and WRI from pursuing their claims against Koman in his individual capacity pending ultimate resolution, by this court, of the arbitrability issue. The court additionally ORDERS WII and WRI to submit additional briefing as described in the introduction so that the court will be able to fairly and expeditiously consider the issues and determine whether a permanent injunction should issue.

Signed at Houston, Texas on September 17, 2010.

_____

Gray H. Miller
United States District Judge

19